TREASURER OF THE COUNTY OF NORFOLK *vs.* COUNTY
COMMISSIONERS OF NORFOLK & another
(and a companion case[1]).

Norfolk.    February 14, 1979. — April 11, 1979.

Present: GRANT, ROSE, & KASS, JJ.

*Statute,* Construction. *County,* Treasurer, Payment of bills, Contract. *Contract,* With county, Bidding for contract. *Practice, Civil,* Declaratory judgment.

A county treasurer was authorized under G. L. c. 35, § 11, to seek declaratory relief as to the legality of certain bills forwarded to him by the county commissioners on warrants for payment despite the expiration of the ten-day period for the payment of county bills contemplated by c. 35, § 10. [370-373]

Where none of a series of purchases made by a county from a chemical supplier individually exceeded the $1,000 limit of the competitive bidding statute, G. L. c. 34, § 17, as amended through St. 1973, c. 908, § 1, although the purchases in the aggregate of "similar items" greatly exceeded that amount, and where there was no basis on which to infer that the purchases had been split for the purpose of evading the requirements of the statute, the purchases were not made in violation of c. 34, § 17. [373-375]

A bill for moving expenses in excess of the $2,000 limit set by G. L. c. 34, § 17, as amended by St. 1976, c. 18, § 1, should not have been incurred by a county without competitive bidding in accordance with § 17, and was therefore invalid and not a proper obligation of the county. [375-376]

A judge erred in ordering a county treasurer to pay a group of bills submitted to the county by a coal and oil company where the

[1] County Commissioners of Norfolk & others *vs.* Treasurer of the County of Norfolk.

amounts had already been paid the company under a contract awarded to it by the county commissioners for servicing and maintaining various air conditioning units in county buildings. [376]

Even though an overtime component in a budget estimate submitted to the Legislature by county commissioners bore the notation "overtime request is necessitated by Potential Collective Bargaining agreements" and certain overtime pay claimed by a county employee did not arise from any collective bargaining agreement, the county treasurer was properly ordered to pay the employee's claim where the notation was merely the explanation required by G. L. c. 35, § 28, and did not create a "subclass" for purposes of c. 35, § 32. [376-378]

CIVIL ACTIONS commenced in the Superior Court on January 24, 1977, and February 15, 1977, respectively.

The cases were heard by *Beaudreau, J.,* on a master's report.

*Seth M. Kalberg, Jr.,* for the county commissioners of Norfolk & others.

*Terry Philip Segal* for the treasurer of the County of Norfolk.

GRANT, J. In these actions the treasurer of Norfolk County (treasurer) challenges the legality of certain bills forwarded to him by the commissioners of Norfolk County (commissioners) on warrants for payment. The treasurer does so in the first case by seeking a declaratory judgment that a series of purchases from the codefendant, a vendor of chemical supplies,[2] had been made in violation of the applicable competitive bidding statute. In the companion case, commenced by the commissioners to require the payment of bills submitted in behalf of five other claimants who were subsequently joined as parties plaintiff,[3] the issue is raised by way of counterclaims in which the treasurer seeks declarations that the payment of those bills (as well as others of some of the same claim-

---

[2] Maintenance Chemical Suppliers, Inc.

[3] Granite City Coal & Oil Co., Inc., Custom Chemical Corporation, State Chemical Manufacturing Company, Teresa Hickey and A & T Moving & Storage, Inc.

370                             7 Mass. App. Ct. 368

Treasurer of the County of Norfolk v. County Commissioners of Norfolk.

ants) would be unlawful for a variety of reasons. The treasurer has appealed from judgments in both cases ordering him to make all the challenged payments.

1. The judgments were not based on the merits of the treasurer's contentions, but on a ruling by the judge who decided the cases that the treasurer is barred from obtaining declaratory relief in either case because of his failure to seek such relief within ten days after the bills had been submitted to him. The judge, in so ruling, relied upon a supposed interrelationship of two consecutive sections of G. L. c. 35, § 10, as unamended,[4] and § 11, as amended through St. 1974, c. 694, § 1.[5] Under the second sentence of § 10 a county treasurer "shall pay all claims against his county within ten days after their allowance."[6] The last sentence of § 11 authorizes a county treasurer to "petition the [S]uperior [C]ourt for a declaratory . . . judgment to determine the legality of any order or orders" for payment drawn by the county commissioners. The judge apparently concluded, as did the master to whom the cases had been referred, that the ten-day pay-

---

[4] "The treasurer shall collect, receive and safely keep all money belonging to the county, and disburse it according to law. He shall not make payments to the county commissioners or associate commissioners to be disbursed by them in behalf of the county. He shall pay all claims against his county within ten days after their allowance. He may pay any claim by a bank check which, when paid and returned, shall be a sufficient receipt therefor."

[5] "No payments [with exceptions not here material] shall be made by a treasurer except upon orders drawn and signed by a majority of the county commissioners, certified by the clerk and accompanied, except in Suffolk county, by the original bills, vouchers or evidences of county indebtedness for which payment is ordered, stating in detail the items and confirming the account. Said clerk shall not certify such orders until he has recorded them in the records of the commissioners. A treasurer may petition the superior court for a declaratory decree or judgment to determine the legality of any order or orders, in accordance with the provisions of chapter two hundred and thirty-one A."

[6] We assume, without deciding, that a claim's "allowance" refers to its approval by the county commissioners or otherwise as provided in § 11.

7 Mass. App. Ct. 368                                    371

Treasurer of the County of Norfolk *v.* County Commissioners of Norfolk.

ment provision of § 10 carries over into § 11, so as to require that a county treasurer seek declaratory relief within ten days or forfeit his right to question the propriety of any item submitted to him.

While the statutory scheme thus envisioned has an appealing simplicity, it lacks analytical support. The provision allowing a treasurer to seek declaratory relief imposes no time limit on his power to do so, and we can discern no basis for importing into that provision a ten-day requirement three sentences away in a different section of the statute which, on its face, applies only to the duty to pay bills. There is certainly nothing in the language of either provision to suggest any such incorporation by reference of one into the other. The two provisions were not even contemporaneously enacted,[7] and their histories after enactment have followed independent courses.[8] In view of the large number of bills likely to cross the desk of the treasurer of a busy county[9] and the strong public interest in preventing the unlawful expenditure of public funds,[10] we are persuaded that if the Legislature had intended to impose so brief a time limit on a treasurer's power to challenge such expenditures, it

---

[7] The ten-day requirement has been a part of G. L. c. 35, § 10, from its inception, whereas the last sentence of G. L. c. 35, § 11, was added much later, by St. 1950, c. 659, § 1. The 1950 legislation amending § 11 made no reference to § 10 and, for all that appears, was enacted without regard to that section.

[8] After the completion of the sequence of events giving rise to the present actions, G. L. c. 35, § 10, was amended to increase the ten-day period for paying bills to thirty days. See St. 1977, c. 50. There is nothing in the text of that amendment which refers to a treasurer's power to seek declaratory relief under § 11, and the title of the amending legislation ("An Act extending the time within which county treasurers may pay claims against their counties") contains no suggestion of any interrelationship between the portions of §§ 10 and 11 which are now under consideration.

[9] The master found that the treasurer of Norfolk County processes 30,000 such bills each year.

[10] Under G. L. c. 35, § 14, a county treasurer is made personally liable for the payment of unlawful bills in certain circumstances.

372 · 7 Mass. App. Ct. 368

Treasurer of the County of Norfolk v. County Commissioners of Norfolk.

would have said so in clear and unmistakable terms. Compare *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 489 (1978); *Boston* v. *Hospital Transp. Servs., Inc.*, 6 Mass. App. Ct. 198, 201 (1978).

Moreover, even if the ten-day provision of § 10 could somehow be regarded as carrying over into § 11, we would expect it to have no more drastic effect on a treasurer's power to obtain declaratory relief under that section than it does on his power to pay bills under § 10. Thus, if we were to adopt the rationale of the master and the judge, logic would force us to hold that a bill not paid within the ten-day period may not be paid at all. We are confident that the Legislature intended no such extraordinary result, and no one contends that it did. Rather, the requirement plainly falls within the well established principle that a statute which relates only to the time of performance of a duty by a public officer, though "imperative in phrase," is ordinarily construed as a mere regulation for the orderly and convenient conduct of public business rather than as a condition precedent to the validity of the act subject to the time limitation. See *Boston* v. *Barry*, 315 Mass. 572, 577-578 (1944); *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. at 496. If that is the role of the ten-day provision in § 10, where it is explicit, we fail to see how it could play a greater role under § 11, where it applies, if at all, only by implication.

We conclude that the treasurer was authorized to seek declaratory relief despite the expiration of the ten-day period for the payment of county bills contemplated by G. L. c. 35, § 10.[11] That he did so by way of counterclaims

[11] We do not understand the appellees to contend that the treasurer was without power to test the legality of the proposed payments on any other ground, and counsel for the appellees conceded as much at oral argument. To read such cases as *Barry* v. *Treasurer of the County of Essex*, 369 Mass. 960 (1975), as precluding resort to declaratory relief for that purpose would run counter to the express language of the last sentence of G. L. c. 35, § 11. See *O'Coin's, Inc.* v. *Treasurer of*

in the companion case, rather than by an action for declaratory judgment initiated by him, is of no consequence.

2. It remains for us to consider the merits of the several claims of illegality asserted by the treasurer in the two cases. While the judge did not reach that aspect of the cases because of the view taken by him of the ten-day provision, he did adopt the master's findings in both cases and thereby provide us with a factual basis for deciding the treasurer's claims. However, we deal with those claims only to the extent that they have been argued in the treasurer's briefs on appeal. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

The sole claim of illegality advanced by the treasurer in his action for declaratory relief was that a protracted series of purchases of chemical supplies from the defendant Maintenance Chemical Suppliers, Inc., during the fiscal year ending June 30, 1976, had been made in violation of G. L. c. 34, § 17, as amended through St. 1973, c. 908, § 1.[12] The master found that none of those purchases had been made on the basis of competitive bidding, that none of them individually exceeded the $1,000 figure which triggered the competitive bidding requirements of § 17, but that the purchases in the aggregate, of "similar items," greatly exceeded that amount. Thus, a violation of § 17 can be made out only if that section regulates not merely single purchases in an amount exceeding the

*the County of Worcester,* 362 Mass. 507, 516-518 (1972). We interpret the "ministerial" characterization of the treasurer's duties in the *Barry* case as going only to his lack of discretion to withhold payments on his own initiative, and not to his right to invoke judicial intervention for that purpose.

[12] "All contracts exceeding one thousand dollars in amount made by the board of county commissioners . . . for the purchase of supplies or equipment, or for services [with exceptions not here material] shall . . . be made only after [competitive bidding]. . . . No contract made in violation of this section shall be valid, and no payment thereunder shall be made. No purchase or contract shall be split for the purpose of evading the requirements of this section. . . ."

statutory figure but also separate purchases of similar items in lesser amounts whose total exceeds that figure.

Apart from the contract-splitting prohibition in § 17 (the last of the sentences quoted in n.12), the section is silent on that point. In that respect § 17 differs materially from the corresponding provisions of such competitive bidding laws as that in the city charter of Boston (St. 1909, c. 486, § 30, as amended through St. 1955, c. 60, § 2), which requires competitive bidding for contracts of work or purchase "the estimated cost of which *alone, or in conjunction with other similar work or purchase which might properly be included in the same contract*, amounts to or exceeds two thousand dollars" (emphasis supplied). Such cases as *Police Commr. of Boston* v. *Boston*, 343 Mass. 480, 483 (1962), and *Central Tow Co., Inc.* v. *Boston*, 371 Mass. 341, 344 n.8 (1976), arising as they did under the latter statute, are therefore of no direct assistance.

The answer, we think, lies in the language of the contract-splitting provision of § 17 itself: "No purchase or contract shall be split *for the purpose of evading* the requirements of this section" (emphasis supplied). While neither that provision nor any of the cognate provisions of other statutes[13] has yet been construed in any appellate decision of this Commonwealth, we have no difficulty in concluding from the dictionary definitions (*Glennon* v. *School Comm. of Boston*, 375 Mass. 757, 763 [1978]) of the words "purpose" and "evading" that the provision has no application in the absence of a specific intent to circumvent the bidding law. See Black's Law Dictionary 1400, 654 (rev. 4th ed. 1968), Webster's Third New Intl. Dictionary, 1847, 786 (1971). We believe it equally clear from the very inclusion of so narrowly worded a provision as that found in § 17 that the section does not prohibit contract splitting except when accompanied by such an intent.

There is nothing in the master's findings to suggest the existence of any such intent, and none can properly be

---

[13] See e.g., G. L. c. 29, § 8A; G. L. c. 40, § 4B; G. L. c. 43, § 28.

inferred. *Stockus* v. *Boston Housing Authy.*, 304 Mass. 507, 511 (1939). *Pacella* v. *Metropolitan Dist. Commn.*, 339 Mass. 338, 347 (1959). See *Fluet* v. *McCabe*, 299 Mass. 173, 174-175, 177-178, 181 (1938). The absence of such a finding was not the subject of any objection to the master's report filed by the treasurer; indeed, we infer from his pleadings and briefs that he never intended to level such a charge against either the commissioners or any vendor. It follows that whatever contract splitting may have been involved in the purchases from Maintenance Chemical Suppliers, Inc., has not been shown to have been in violation of G. L. c. 34, § 17, and that the judgment was right in ordering the treasurer to pay for those purchases, albeit for the wrong reason.[14]

3. The treasurer also challenged one group of bills in the companion case, those of A & T Moving & Storage, Inc.,[15] on the ground that they arose from services obtained in violation of G. L. c. 34, § 17. There were three such bills: two of them, in the respective amounts of $528.50 and $2,832, were occasioned by the move of the district attorney's office to a new location, which the master found to have been attributable to "one job in two different segments"; and a single bill for $517.50 for moving the county commissioners into the space vacated by the district attorney. The moving expenses were all incurred within a two-week period in August, 1976.[16]

---

[14] The amount of the payment ordered was actually less than the total of the bills submitted, apparently because of the master's conclusion that the total indebtedness should be calculated on a "Quantum Meruit basis" because of its having been incurred in "violat[ion] [of] the spirit of the bidding law, if not the terms thereof," and because of an outstanding consent judgment involving previous purchases from the same vendor. We do not decide whether that reduction was proper, as neither the commissioners nor the vendor took an appeal from the relevant judgment. *Mahoney* v. *Mahoney*, 5 Mass. App. Ct. 720, 726-727 (1977).

[15] We do not consider another group of bills challenged on the same ground (those for certain chemical supplies) for the reason stated in the third sentence of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[16] By that time G. L. c. 34, § 17, had been amended to provide that

The treasurer was rightly ordered to pay the two smaller bills for the reasons already stated in part 2 of this opinion. The bill for $2,832, however, was obviously within the ambit of § 17 and should not have been incurred without competitive bidding in accordance with that section. The judgment in the companion case was therefore improper in ordering the payment of that bill, which, under that section, was invalid and not a proper obligation of the county in any amount. G. L. c. 34, § 17, as amended.

4. Another group of bills, those of Granite City Coal & Oil Co., Inc., is challenged in the companion case as duplicative of amounts already paid that company under a contract awarded to it by the commissioners for servicing and maintaining various air conditioning units in county buildings. The master found that such was the case with all the Granite City bills with the exception of one for $234, which (the master found) was not within the scope of that contract. The judgment was wrong in ordering the payment of the remaining bills, as the county was under no obligation to pay twice for the same services.

5. Finally, the treasurer contests so much of the judgment in the companion case as ordered him to pay $512.46 to a county employee named Teresa Hickey as overtime pay. Here the treasurer rests his attack on certain niceties of the laws pertaining to county budgets. While the budget for Norfolk County for the fiscal year ending June 30, 1976, contained an appropriation of $163,981.22 for "Personal services" (St. 1975, c. 575, § 1, item 3.1), the treasurer correctly points out that that appropriation was based on a budget estimate submitted to the Legislature by the commissioners (introduced as an exhibit and incorporated by reference in the master's report) and that the overtime component in that estimate

the competitive bidding requirements therein applied only to contracts exceeding $2,000 in amount. See St. 1976, c. 18, § 1.

7 Mass. App. Ct. 368                         377

Treasurer of the County of Norfolk v. County Commissioners of Norfolk.

bore the notation "overtime request is necessitated by Potential Collective Bargaining agreements." The master (as we read his report) found that the overtime pay claimed by Mrs. Hickey did not arise from any collective bargaining agreement, and the treasurer contends that the bill submitted in her behalf was therefore improper. The treasurer bases his contention primarily upon G. L. c. 35, § 32, as appearing in St. 1970, c. 147, § 1, the first two paragraphs of which are set out in the margin.[17] He seems to argue that, by operation of § 32, the terms of the commissioners' budget estimate for personal services, including its legend relative to overtime, have the force of law.

The argument is valid only up to a point. Section 32 provides that county appropriations be "based upon detailed schedules approved by the joint committee on counties," such as the schedule just referred to, and, with exceptions which need not concern us, that "no liability may be incurred and no expenditure shall be made in excess of the amount available in an existing appropriation for a function, a main group, a class or a subclass." While it is clear from other provisions of § 32 that the four terms last mentioned ("function", "main group", "class" and "subclass") refer to an established hierarchy of county budget categories arranged in descending order of magnitude, we are given no statutory definitions of those terms, but must resort instead to a publication issued by the Director of Accounts entitled "Standard Clas-

---

[17] "Sums appropriated in appropriation acts for counties . . . shall be based upon detailed schedules approved by the joint committee on counties, copies of which shall be deposited with the director of accounts.

"Said director shall file with the county commissioners and the county treasurer of each county a certification of the amounts appropriated as set forth in the approved schedules. Except as provided by such acts or except as otherwise provided by law, no liability may be incurred and no expenditure shall be made in excess of the amount available in an existing appropriation for a function, a main group, a class or a subclass."

sification of Expenditures by Kinds of Services and Commodities Arranged by Main Groups, Classes and Sub-Classes," which was also introduced in evidence before the master and referred to in his report. From that publication we learn that the "main group" pertinent to Mrs. Hickey's claim is one entitled "Personal services" (which was comprised of the entire $163,981.22 appropriation for Norfolk County previously referred to), that one of the "classes" within that group is coded and designated "120 Overtime,"[18] and that there are no recognized "sub-classes" within that class.[19]

Applying that learning to the claim of Mrs. Hickey, we perceive her claim as plainly within the "class" of overtime, and not barred by any "subclass" refinement (there being no "subclasses" within that "class"). The reference to collective bargaining obligations in the commissioners' budget request cannot properly be regarded as creating such a subclass where none existed before; rather we think it nothing more than the explanation required by the concluding clause of the first sentence of G. L. c. 35, § 28, as most recently amended by St. 1971, c. 766, §§ 2 and 3.[20] See *County Commissioners of Norfolk* v. *Board of Norfolk County Retirement Sys.*, 377 Mass. 696, 698-699 (1979). Accordingly, there was no error in allowing Mrs. Hickey's claim.

The judgment in the first case is affirmed; the judgment in the companion case is to be modified in accordance with this opinion and, as so modified, is affirmed; costs of appeal are not to be awarded to any party.

*So ordered.*

---

[18] According to the Director of Accounts' publication, the other "classes" are: "100 Permanent employees", "110 Temporary employees" and "130 Other compensations to employees."

[19] There are "subclasses" within virtually every other "class" in the Director of Accounts' lexicon. Under the "class" entitled "Communications", for example, we discover "subclasses" for "messenger", "telegraph", "telephone" and "teletype services."

[20] We note that the commissioners appear to have made no request for any overtime appropriation for the preceding fiscal year.