**MINNESOTA EDUCATION ASSOCIATION and Minnesota Community College Faculty Association, Respondents,**

v.

**STATE of Minnesota et al., Appellants.**

No. 49868.

Supreme Court of Minnesota.

Aug. 24, 1979.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Stephen F. Befort, and Barbara Lindsey Sims, Sp. Asst. Attys. Gen., St. Paul, for appellants.

Robins, Davis & Lyons, Stephen D. Gordon, and Bruce A. Finzen, St. Paul, for respondents.

SHERAN, Chief Justice.

This is an appeal by the State of Minnesota, the State Commissioner of Personnel, and the Legislature, defendants in an unfair labor practice action brought by the Minnesota Education Association and the Minnesota Community College Faculty Association ("MCCFA"). On January 30, 1979, the District Court of Ramsey County awarded judgment and damages to MCCFA in an amount equal to the difference between its 1977 salary arbitration award and a subsequent legislative salary appropriation reducing the award. A hearing was

held before this court on April 26, 1979. On May 1, 1979, an order was issued reversing the damage award of the district court and noting that this opinion would follow.

The MCCFA is the exclusive representative of the professional staff of the Minnesota Community College System and is an affiliate organization of the Minnesota Education Association. The MCCFA has negotiated collective bargaining contracts with the State of Minnesota since 1973.

Negotiations for the contract for community college faculty for 1977–79 began in April, 1976, between the MCCFA and representatives of the State Commissioner of Personnel. An impasse was reached in February, 1977. Salary structure and a non-discrimination clause were submitted to an arbitration panel. On May 3, 1977, the arbitration panel issued an award which provided an overall salary increase of about 18% for 1977–79. This award was then incorporated into a written contract between the MCCFA and the State Community College Board.

The community college faculty contract was then submitted to the Legislature pursuant to Minn.St. 179.74, subd. 5, which provides for legislative review. The interpretation of this statute is the major issue in this case. The Legislature responded on May 19 and 20 by passing Minn.Laws 1977, ch. 449, § 5, which reduced the community college salary increase to 14%, which was the increase granted that year to state university faculty. On about June 20, a salary schedule conforming to ch. 449 § 5 was inserted into the MCCFA collective bargaining contract.

On September 23, 1977, the MCCFA brought an unfair labor practice suit against the state for refusing to comply with a valid arbitration award and alternatively claimed that Minn.St. 179.74, subd. 5, is a denial of equal protection if it authorizes the Legislature to modify an arbitra-

tion award. This appeal is from the district court decision that the state had committed that unfair labor practice.

Minn.St. 179.74, subd. 5, the statute pursuant to which the Legislature reviews collective bargaining contracts with state employees, reads as follows:

"The commissioner of personnel is authorized to and may enter into agreements. *The provisions of said agreements which establish wages and economic fringe benefits shall be submitted to the legislature to be accepted, rejected or modified.* A state employee whose exclusive representative, as defined by section 179.63, subdivision 6, has not executed an agreement with the state covering wages and economic fringe benefits on or before May 15 of each odd numbered year shall not receive the wage and economic fringe benefit increases provided pursuant to an agreement executed under this subdivision." (Emphasis added)

At issue in this case is whether this statute authorizes arbitrated salary provisions in contracts with state employees to be submitted to the Legislature and modified.[1] The MCCFA takes the position that the word "agreements" in the statute refers only to voluntarily negotiated provisions and not arbitrated provisions, which are binding on the parties and not subject to legislative modification. The claim is that arbitration awards, far from being "agreements," result from an inability to agree. Thus, the MCCFA contends that only the negotiated provisions of its contract were subject to legislative modification and the reduction of the binding, arbitrated provisions is an unfair labor practice.

■ Two lines of reasoning lead us to a rejection of this contention. First of all, an arbitration award is not the "agreement" that is submitted to the Legislature. The award was in this case and is routinely incorporated into a written contract be-

---

1. Our recent decision in *City of Richfield v. Local No. 1215,* 276 N.W.2d 42 (Minn.1979) dealt with arbitration involving non-state public employees and did not necessitate an interpretation of Minn.St. 179.74, subd. 5.

tween the bargaining unit and the state. It is this contract which is submitted to the Legislature, and such a contract is clearly an "agreement" within the meaning of the statute.

■ Second, and more significantly, it is apparent from the legislative history of Minn.St. 179.74, subd. 5, that the intent of the Legislature was to reserve the right to review all salary provisions of contracts with state employees, however arrived at. Prior to 1971, state employees in Minnesota had no right to engage in collective bargaining. That year, the Legislature passed the Public Employees Labor Relations Act ("PELRA"), which provided a comprehensive structure for labor relations with public employees. In this original statute, the Legislature specifically reserved the right to review all portions of state collective bargaining contracts. The original version of 179.74, subd. 5, stated:

> "The negotiating team is authorized to and may enter into tentative agreements to be submitted to the legislature."

In fact, under this original PELRA, all public employers had the right to reject arbitration awards. Minn.St.1971, § 179.72, subds. 7 and 9.

■ In 1973, Minn.St. 179.74, subd. 5, was enacted in its present form, absent the last sentence, which was added in 1977. This change went along with an important revision of the PELRA. The right to reject arbitration awards was taken away from public employers. Minn.St.1973, § 179.72, subd. 7. However, the "employer" of state employees was defined to be the Commissioner of Personnel. Minn.St.1973, § 179.74, subd. 2. The Commissioner was the person designated to negotiate with state employees. Minn.St.1973, § 179.74, subd. 4. Thus, it appears that the 1973 revisions were designed to make arbitration binding on all public employers. It seems, however, that the Legislature exempted itself from that requirement by binding only the state negotiators but not itself. In other words, the

executive branch is bound, but the legislative branch reserved the right to review all contracts. Also, § 179.74, subd. 5, as enacted in its current form in 1973, provides that only the financial portions of labor contracts would receive legislative review. This is consistent with a legislative belief that the duty to determine the size of appropriations could not be delegated away.

There is no doubt that everyone involved with the process of collective bargaining with state employees has assumed all along that the Legislature did, in 1973, reserve this right to modify all contracts, including arbitration awards. The author of the 1973 amendments to the PELRA, Representative LaVoy, in explaining § 179.74, subd. 5, to the House Governmental Operations Committee, stated:

> "What we are saying here is that the *Legislature,* being the body which has to appropriate funds for financing our state and running our state, *must make the final decision on all wages and economic fringe benefits to be paid to our state public employees. We still retain that option."* (Emphasis added)

Subsequent legislatures have obviously assumed the right to modify arbitration awards had been retained in 1973—in 1975 as well as in 1977 the Legislature did just that with the MCCFA award. Minn.Laws 1975 ch. 433 § 11(1). All arbitration awards to state employees are routinely incorporated into written contracts reviewed by the Legislature.

The administrative officials taking part in bargaining have assumed arbitration awards were subject to further review. In fact, even the MCCFA's two principal negotiators have stated publicly that the Legislature retained the right to modify awards.

The policy reasons behind this retention of legislative authority over otherwise binding arbitration awards are apparent—the necessity for the representatives of the people to retain final control over appropriations and to apply uniform budgetary con-

siderations to numerous bargaining units. Consequently, so we are informed, not a single state legislature in the country is bound by arbitration awards to state employees.[2] Faced with this weight of historical evidence, policy factors, and universal practice, it is not for us to rewrite the PELRA by adopting the undeniably strained interpretation advocated by the MCCFA, even though that group strenuously complains of unfair treatment.

 Having decided Minn.St. 179.74, subd. 5 reserves the right of legislative review and modification of arbitration awards involving state employees, we must consider the MCCFA's claim that the Legislature has denied equal protection to state employees by treating them differently than other public employees. Such a legislative classification, which does not involve a fundamental personal right or a suspect classification, will be upheld if it has some rational basis. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Since, as pointed out by the MCCFA, there is no distinction between the jobs performed by state and non-state public employees, the inquiry must be whether there is a rational basis for treating the two groups differently solely on the basis of their employer. The state offers three such bases, all of which we consider adequate: 1) Governmental power at the state level is separated into distinct branches. In other words, the Legislature may properly decline to be bound in its legislative function by the employees of the executive branch. This separation is not present at the local level. 2) The size and complexity of state government require centralized control. 3) The Legislature's special constitutional responsibilities prevent it from binding itself as to appropriations.

We find the third rationale particularly compelling. As the source of sovereign governmental power, the Legislature is able to bind all other groups except a subsequent legislature, and for this reason must necessarily reserve the right to review future arbitration awards of state employees. Consequently, there is no denial of equal protection inherent in Minn.St. 179.74, subd. 5, as interpreted herein.

Because we have concluded that Minn.St. 179.74, subd. 5 is a constitutionally valid statute reserving the right of legislative review and modification of this arbitration award, it follows that Minn.Laws 1977, ch. 449 § 5, which reduced the award from 18% to 14%, is merely an expression of that right and suffers no constitutional infirmity.

Judgment reversed by order of this court of May 1, 1979.

2. The MCCFA challenges this assertion as regards Massachusetts.