COUNTY OF SUFFOLK & another *vs.* LABOR RELATIONS
COMMISSION.

December 16, 1982. — January 13, 1983.

Present: GRANT, CUTTER, & WARNER, JJ.

*Labor Relations Commission. Municipal Corporations,* Collective bargaining, Municipal finance. *Labor,* Collective bargaining contract.

On appeal from a decision of the Labor Relations Commission despite a suggestion that the question may have become moot, this court considered whether a court, an arbitrator, or an administrative agency can order the payment of amounts which are called for under collective bargaining agreements but which have not been funded by appropriations, where the question had been argued fully and was likely to recur. [130-131]

The Labor Relations Commission exceeded its authority under G. L. c. 150E, § 11, by ordering the county of Suffolk to pay the employees of the registry of deeds for Suffolk County certain monies which were apparently owed them under the terms of their collective bargaining agreement with the county, where the order was made in the absence of any appropriation from which the ordered payments could be made and without any prior order that the mayor of Boston request such an appropriation from the city council, as required by G. L. c. 150E, § 7 (*b*). [131-133]

APPEAL from a decision of the Labor Relations Commission.

*Eric J. Nadworny,* Assistant Corporation Counsel, for the plaintiff.

*Alan H. Shapiro* for the defendant.

*David B. Rome* for the intervener.

GRANT, J. On July 18, 1980, this court vacated a preliminary injunction which had been entered in the Superior Court by which the city of Boston and various of its officers had been ordered to pay teachers and others in the Boston school system monies which were apparently owed them under the terms of their collective bargaining agreements

but which had not been appropriated by the city council. *School Comm. of Boston* v. *Mayor of Boston,* 10 Mass. App. Ct. 840 (1980). We did so in view of what we considered a likelihood that we would conclude on the merits of the case that the injunction ran afoul of the provisions of St. 1909, c. 486, § 16, as in effect prior to St. 1982, c. 190, § 17.[1] On October 27, 1981, a judge of the Superior Court, acting on the authority of *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 464-465, 467 (1976), vacated the award of an arbitrator which in terms ordered the county of Suffolk to pay the employees of the registry of deeds for Suffolk County (see G. L. c. 36, § 38) certain monies which were apparently owed them under the terms of their collective bargaining agreement with the county but which had not been appropriated by the Boston city council.[2]

Three weeks later, on November 17, 1981, the Labor Relations Commission (commission), purporting to act under G. L. c. 150E, § 11, ordered the county to pay the registry employees the same monies as those covered by the arbitra-

---

[1] "No official of said city, except in case of extreme emergency involving the health or safety of the people or their property, shall expend intentionally in any fiscal year any sum in excess of the appropriations duly made in accordance with law . . . . Any official who shall violate the provisions of this section shall be punished by imprisonment for not more than one year, or by a fine of not more than one thousand dollars, or both." See *Boston Gas Co.* v. *Boston,* 13 Mass. App. Ct. 408, 415 (1982), and cases cited. Section 16 is the Boston analogue of G. L. c. 44, § 31.

[2] By reason of the various statutory provisions considered in *Thompson* v. *Chelsea,* 358 Mass. 1 (1970), the city of Boston is responsible for raising the monies necessary to pay all the expenses of operating the county of Suffolk. The mayor and the city council have the powers and perform the duties of county commissioners. G. L. c. 34, § 4. *Keane* v. *City Auditor of Boston,* 380 Mass. 201, 202 n.3 (1980). The city treasurer is also the county treasurer. G. L. c. 35, § 1. General Laws c. 35, § 42, reads as follows: "The auditor of Boston shall be the auditor of Suffolk county. No bill against said county shall be paid until audited and allowed by him." This case has been argued to us on the footing that St. 1909, c. 486, § 16 (*supra,* note 1), is the Suffolk County analogue of G. L. c. 35, §§ 14 and 32, second par. See *Treasurer of the County of Norfolk* v. *County Commrs. of Norfolk,* 7 Mass. App. Ct. 368, 377-378 (1979).

tor's award, together with other amounts which will be identified later in this opinion. The commission issued its order (i) in the absence of any appropriation from which the ordered payments could be made, (ii) without any prior order that the mayor of Boston request such an appropriation from the city council, as required by G. L. c. 150E, § 7(b), and (iii) despite the county's request that the commission defer to the action of the Superior Court. The county sought review in this court. G. L. c. 150E, § 11, as amended through St. 1981, c. 351, §§ 243-245. G. L. c. 211A, § 5, as amended by St. 1981, c. 351, § 248.

The basic facts are not in dispute. The collective bargaining agreement with the registry employees was negotiated during the fall of 1980 and was to cover the two-year period commencing July 1, 1980. The agreement called for pay raises which were to be retroactive to July 1, 1980, for further pay raises which were to take effect on July 1, 1981, and for a one-time bonus of $500 for each covered employee. The mayor did not sign the agreement until April 1, 1981, when called to task by the commission. See *Boston* v. *Labor Relations Commn.*, *ante* 122, 123 (1983). Although it was known that there were not sufficient monies in any of the relevant appropriations from which to pay any of the cost items called for by the agreement, the mayor ignored his duty under G. L. c. 150E, § 7(b), as amended through St. 1980, c. 329, § 125, to submit a request to the city council for an appropriation necessary to fund those items.[3] The promised pay raises were reflected in the pay checks issued

---

[3] General Laws c. 150E, § 7(b), reads in relevant part as follows: "The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein . . . . If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining . . . ." In the context of the relationship between the city and the county, and for the purposes of this case, the mayor must be taken as the "chief executive officer" of the "[e]mployer" and the city council as the "legislative body", as those terms are defined or illuminated in G. L. c. 150E, § 1, as most recently amended.

during the four-week period commencing May 26, 1981. The city auditor refused to approve the payroll which was made up for the last week of June, 1981, on the ground that there was insufficient money left in any relevant appropriation from which the payroll could be met. There were no unencumbered funds in any of the registry accounts from which to defray either the $500 bonuses or the pay raises which were apparently owed for the period between July 1, 1980, and May 26, 1981.[4]

The union which represented the registry employees complained to the commission, which, after an investigation, issued its own complaint against the county, charging it with violations of G. L. c. 150E, § 10(a)(1) and (5). At the hearing on that complaint, counsel for the union asked that the mayor be ordered to comply with the mandate of G. L. c. 150E, § 7(b), by submitting to the city council a request for an appropriation sufficient to fund the cost items of the collective bargaining agreement, and for an order expediting the distribution of the proceeds of the anticipated appropriation. Not surprisingly, the commission found the county guilty as charged. Acting sua sponte, the commission ordered the payment of the amounts apparently owed the employees under the agreement, despite the absence of an appropriation to which those amounts could be charged, and without any prior order that the mayor request such an appropriation. The commission also ordered the payment of the union's attorney's fees and expenses in connection with the investigation, preparation and presentation of the charges before the commission.

1. There is a preliminary question which need not detain us. We were advised at the argument, and the parties subsequently stipulated in writing, that on October 4, 1982, the employees in question received their pay for the last week of

---

[4] The auditor seems not to have exercised whatever powers of transfer he may have had during the period June 10 through 30, 1981, by virtue of the provisions of St. 1909, c. 486, § 3B, inserted by St. 1941, c. 604, § 1, and amended by St. 1954, c. 24. See *City Council of Boston* v. *Boston*, 386 Mass. 171, 172 n.2, 180-181 & n.5 (1982).

June, 1981, the unpaid portions of their retroactive pay raises for the fiscal year 1981, and their $500 bonuses. We have not been advised of the source of any of those payments, nor do we know whether the employees have received the pay raises for fiscal 1982 which were called for by the agreement or whether the union has been reimbursed for the attorney's fees and expenses ordered by the commission. It is obvious from the recitations in the opening portion of this opinion that there is a recurring question as to whether a court, an arbitrator or an administrative agency can order the payment of amounts which are called for under collective bargaining agreements but which have not been funded by appropriations. That question has been argued fully, and we think it appropriate to express our views. See and compare *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943); *New England Merchs. Natl. Bank* v. *Spillane*, 14 Mass. App. Ct. 685, 687-688 (1982), and cases cited.

2. The commission seeks to justify its order for the payment of unfunded amounts under the power to contrive remedies which has been granted to it under the first two sentences of the concluding paragraph of G. L. c. 150E, § 11.[5] We think the commission has overlooked several of the basic provisions of the legislation it is charged with administering. We observe first that the provisions of St. 1909, c. 486, § 16 (*supra*, note 1), are not among those listed in G. L. c. 150E, § 7(*d*), as most recently amended by St. 1980,

---

[5] "If, upon all the testimony, the commission determines that a prohibited practice has been committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take such further affirmative action as will comply with the provisions of this section, including but not limited to the withdrawal of certification of an employee organization established by or assisted in its establishment by any such prohibited practice. It shall order the reinstatement with or without back pay of an employee discharged or discriminated against in violation of the first paragraph of this section." The "first paragraph" referred to is concerned with practice and procedure before the commission and has nothing to do with any remedy that may be available to it.

c. 354, § 17A, which must yield to inconsistent provisions of a collective bargaining agreement.[6] On the face of the matter, the commission, by ordering specific performance of the collective bargaining agreement involved in this case, would appear to have mandated the perpetration of criminal offences by public officials. See *Board of Educ.* v. *Boston*, 386 Mass. 103, 111 (1982).

More fundamental, perhaps, is the commission's effort to elide the provisions of G. L. c. 150E, § 7(*b*), which are set out in n.3 hereof. That subsection is explicit that a public employer is to submit to the "appropriate legislative body . . . a request for an appropriation necessary to fund the cost items contained . . . in" a collective bargaining agreement and that the "cost items" are to be returned to the parties for further bargaining "[i]f the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items." "Cost items" are defined in G. L. c. 150E, § 1, inserted by St. 1973, c. 1078, § 2, as "the provisions of a collective bargaining agreement which require an appropriation by a legislative body." That same section defines a "[l]egislative body" in terms of the public "body which has the power of appropriation with respect to an employer as defined in this chapter."

When the defined terms are considered and read in conjunction with the words "appropriation necessary to fund," which are used not once but twice, the inescapable conclusion is that no "cost item" which is called for by a collective bargaining agreement between a "public employer" and an "[e]mployee organization," as also defined in § 1, can assume any monetary significance unless or until there is a legislatively established appropriation from which the item

---

[6] The same is true of the provisions of G. L. c. 44, § 31, which applies to all cities and towns other than Boston. See *Massachusetts Gen. Hosp.* v. *Revere*, 385 Mass. 772, 775-776 (1982), and cases cited. We regard the inclusion of G. L. c. 44, § 33A, in (*f*) of G. L. c. 150E, § 7(*d*), as persuasive evidence that the Legislature did not intend that any of the other provisions of the Municipal Finance Act (G. L. c. 44) should be overridden by a collective bargaining agreement.

can be paid. We think it clear that the only remedy available in a case such as the present, in which the mayor (for whatever reason) has failed utterly to perform his duty under § 7(*b*), is an order compelling him to submit to the city council a request for an appropriation which, when taken in conjunction with any unencumbered funds then available, will be sufficient to fund the cost items called for during the first year of a collective bargaining agreement. See *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 470-471, 473-474 (1976); *Boston Teachers Local 66* v. *Boston,* 382 Mass. 553, 560, 562-563, 565, 567 (1981); *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 203-204, 210 (1982).

It follows that the commission exceeded its authority (G. L. c. 30A, § 14[7][*b*]) when it ordered the payment of the cost items in the absence of any relevant appropriation.[7]

3. For the reasons set out in *Boston* v. *Labor Relations Commn., supra* at 124-126, the commission also exceeded its authority when it ordered the payment of the union's attorney's fees and expenses.

So much of the commission's decision as is considered in parts 2 and 3 of this opinion is vacated, and the case is remanded to the commission for further proceedings not inconsistent with this opinion; costs of appeal are not to be awarded to any party.[8]

*So ordered.*

---

[7] We are not impressed by the union's argument that it should not have to bear any responsibility for determining whether there is an available appropriation from which cost items can be paid. Such a responsibility is routinely cast on contractors, vendors and others who would do business with the city. See, e.g., *Dyer* v. *Boston,* 272 Mass. 265, 273-275 (1930) ("The contractor was bound to take notice of [the] limitation of authority [in St. 1909, c. 486, § 16] and to make his contracts with reference thereto"); *Adalian Bros.* v. *Boston,* 323 Mass. 629, 630-631 (1949); *Central Tow Co.* v. *Boston,* 371 Mass. 341, 343-345 (1976). At least one other union appears to have been up to the responsibility. See *Boston Teachers Local 66* v. *Boston,* 382 Mass. at 565.

[8] These orders are not to be understood as a judicial endorsement of the shabby treatment which was accorded to the affected employees by the mayor and certain other members of the city administration in this and in the *Boston* case, *supra.*