**FAIRBANKS POLICE DEPARTMENT CHAPTER, ALASKA PUBLIC EMPLOYEES ASSOCIATION, Appellant,**

v.

**CITY OF FAIRBANKS, Appellee.**

No. S–7060.

Supreme Court of Alaska.

June 28, 1996.

William K. Jermain, James A. Gasper, Jermain, Dunnagan & Owens, P.C., Anchorage, for Appellant.

Paul J. Ewers, Deputy City Attorney, Herbert P. Kuss, City Attorney, Fairbanks, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and SHORTELL, J. Pro Tem.*

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

SHORTELL, Justice Pro Tem.

## I. INTRODUCTION

A chapter of the Alaska Public Employees Association (APEA), a labor organization that represents employees of the Fairbanks Police Department, sued the City of Fair-banks (the City) for failure to comply with the result of mandatory interest arbitration during collective bargaining between the parties. APEA appeals the superior court's grant of summary judgment in favor of the City. We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

APEA exclusively represents certain employees of the Fairbanks Police Department. The collective bargaining relationship between APEA and the City is governed by the Public Employment Relations Act (PERA), AS 23.40.070—.260.

PERA divides public employees into three classes. AS 23.40.200(a). APEA represents police employees, who by statute belong to the first class: those employed to perform "services which may not be given up for even the shortest period of time." AS 23.40.200(a)(1), .200(b). PERA flatly prohibits this class of employees from engaging in strikes and compels submission of their unresolved collective bargaining issues to arbitration. AS 23.40.200(b).

In collective bargaining that began in 1990, APEA and the City could not resolve three outstanding issues, one of which concerned meal and clothing (or uniform) allowances. Under the terms of PERA, the outstanding issues were submitted to arbitration. On May 8, 1991, the arbitrator, John Abernathy, issued a decision. In addition to awarding pay raises, Abernathy awarded four percent increases in the meal and clothing allowances to become effective on July 1, 1991 and on July 1, 1992.

Under PERA, monetary terms of collective bargaining agreements are subject to legislative appropriation. AS 23.40.215(a). The City's executive branch sought and obtained approval for the pay increases from the Fairbanks City Council (the Council). The Council never funded the future meal and clothing allowance increases.

In 1993 a police employee noticed that employees had not received the increases in meal and clothing allowances. APEA demanded them. The City responded that under § 215(a) of PERA, implementation of the arbitrator's award is subject to legislative appropriation. Because the Council had never funded the allowance increases, the City took the position that it did not have to comply with the arbitral award.

APEA filed suit to enforce the award. The superior court granted summary judgment in favor of the City, finding that arbitration awards are subject to legislative funding under § 215(a), that this award had not been funded, and that employees were therefore not entitled to it.

APEA appeals. At issue is a narrow question of statutory interpretation. APEA urges us to find § 215(a) inapplicable to arbitration results reached under § 200(b). The City urges us to uphold the superior court's finding that § 215(a) applies to the results of arbitration.

## III. DISCUSSION [1]

### A. Subsection 215(a) Applies to Arbitration Awards.

 APEA asserts that § 215(a), the statute requiring legislative approval, does not apply to arbitration awards established under § 200(b). After the superior court issued its opinion, this court clearly settled the law on the question. Public Safety Employees Ass'n, Local 92 v. State, 895 P.2d 980, 986 (Alaska 1995), aff'd on reh'g, 902 P.2d 1334 (Alaska 1995) (citing State v. Public Safety Employees Ass'n, 798 P.2d 1281, 1285 n. 7 (Alaska 1990)). Subsection 215(a) does apply to arbitration awards. Id.

---

1. In reviewing a lower court's grant of summary judgment, this court "determine[s] whether any genuine issue of fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts." R.E. v. State, 878 P.2d 1341, 1345 (Alaska 1994) (quot-ing Wright v. State, 824 P.2d 718, 720 (Alaska 1992)). In questions involving statutory interpretation, this court substitutes its independent judgment for that of the trial court. Journey v. State, 895 P.2d 955, 957 n. 5 (Alaska 1995).

This interpretation is dictated by the explicit provision that § 215(a) applies to "any agreement entered into under AS 23.40.070—23.40.260." AS 23.40.215(a). Moreover, this interpretation is in keeping with the purpose of § 215(a): to preserve legislative authority over governmental appropriations. *Public Employees' Local 71 v. State*, 775 P.2d 1062, 1064 (Alaska 1989). The alternative would ignore the purpose of § 215(a) and would fail to interpret PERA as a consistent whole.[2]

Legislative approval is a common requirement in public sector collective bargaining. *See State v. Florida Police Benevolent Ass'n, Inc.*, 613 So.2d 415, 417 (Fla.1992) (public employees' unions may need " 'to, in effect, obtain approval of a proposed contract by a legislative body through appropriation' ") (quoting *Antry v. Illinois Educ. Labor Relations Bd.*, 195 Ill.App.3d 221, 141 Ill.Dec. 945, 552 N.E.2d 313, 343 (1990)). The requirement ensures legislative control over fiscal appropriations.

The superior court concluded, based on the statute's plain meaning and purpose, that the legislative funding requirement of § 215(a) applies to collective bargaining agreements reached through arbitration under § 200(b). We reach the same conclusion as did the superior court. The legislative appropriation requirement of § 215(a) applies to arbitration awards under § 200(b). *Public Safety Employees Ass'n, Local 92*, 895 P.2d at 986.

### B. *Subsection 215(a) Applies to Political Subdivisions of the State.*

■ APEA suggests that § 215(a) does not apply "to political subdivisions of the State." This interpretation contradicts PERA. Both sides agree that other provisions of PERA apply to this agreement and that the City is a public employer under PERA.[3] Subsection 215(a) states, "[t]he monetary terms of any agreement entered into under [PERA] are subject to funding through legislative appropriation." The word "legislative" can describe the Council, and nothing else in § 215(a) indicates inapplicability to political subdivisions of the state. Although the terms of § 215(b) refer only to the state, the superior court correctly noted that § 215(a) predates § 215(b) and nothing indicates an intent to make § 215(a) inapplicable to municipalities.

### C. *The City Is Not Estopped from Applying Subsection 215(a).*

■ Arguing in the alternative, APEA claims that equitable estoppel bars the City from applying § 215(a) to the arbitrator's award.[4] The City conceded in oral argument that APEA raised equitable estoppel at the superior court level; therefore APEA is not deemed to have waived this argument. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

■ The elements of estoppel are assertion of a position by word or conduct, reasonable reliance on that assertion, and resulting prejudice. *Municipality of Anchorage v. Schneider*, 685 P.2d 94, 97 (Alaska 1984). APEA contends that the City asserted a position when the City Council resolved that the disputed issues "are to be submitted to binding arbitration." APEA interprets this resolution as establishing that the City would consider itself bound by the arbitration results and would comply with them.

APEA had notice by virtue of the plain language of § 215(a) that the "monetary

2. Although the superior court reached this conclusion, it determined that public policy might support the opposite result, because PERA as written creates unequal bargaining power; § 215(a) allows the legislature to choose whether to accept or reject a negotiated result, but § 200(b) prohibits essential employees from striking, thereby denying them the same choice. Subsection 215(a) also allows the legislature to make that choice in several stages, as each item of a negotiated result requires funding. Because on its face § 215(b) applies only to the state government, this problem may be heightened where the dispute involves a municipality.

3. PERA defines a "public employer" to include "the state or a political subdivision of the state." AS 23.40.250(7). The City exempted itself from PERA in 1972, but waived its exemption in 1983, making PERA applicable to its labor relations. Fairbanks Ordinance 4264 (Sept. 12, 1983).

4. APEA has only argued that the equitable estoppel doctrine applies here. It asserts no other aspect of estoppel doctrine.

terms of any agreement entered into under AS 23.40.070—23.40.260 [would be] subject to funding through legislative approval." In addition, this court in 1989 said "it is clear that the monetary terms of a collective bargaining agreement are not effective until the funds are appropriated by the legislature." *Public Employees' Local 71,* 775 P.2d at 1064. In 1990, the court reiterated that finality in interest arbitrations could not be achieved until legislative funding took place. *Public Safety Employees Ass'n,* 798 P.2d at 1285 n. 7 (recognizing that, although finality is an important consideration in interest arbitration, "the legislature eventually might decide not to fund an arbitrator's award"). Other jurisdictions have also upheld the discretionary power of state legislatures to veto collective bargaining agreements by refusing to fund them. *See Florida Police Benevolent Ass'n,* 613 So.2d at 420 ("the vast majority of courts have held that the agreements were subject to this contingency") (citing *District 2A, Transp., Tech., Wrhse., Indus. & Serv. Employees Union v. Government of the Virgin Islands,* 794 F.2d 915 (3d Cir.1986)); *Public Employees' Local 71,* 775 P.2d at 1062; *Suffolk County v. Labor Relations Comm'n,* 15 Mass.App.Ct. 127, 444 N.E.2d 953 (1983), *rev. denied,* 388 Mass. 1103, 447 N.E.2d 670 (1983); *Minnesota Educ. Ass'n v. State,* 282 N.W.2d 915 (Minn.1979), *appeal dismissed,* 444 U.S. 1062, 100 S.Ct. 1001, 62 L.Ed.2d 744 (1980); Stephen F. Befort, *Public Sector Bargaining: Fiscal Crisis and Unilateral Change,* 69 Minn. L.Rev. 1221, 1243–45 (1985)).

In the face of clear statutory language requiring legislative funding of the arbitrator's award, Alaska case law requiring legislative funding as the last step in the collective bargaining process, and the "vast majority" of decisions from other jurisdictions upholding legislative funding requirements, APEA agreed to submit its proposals to arbitration. The City also agreed to arbitration. Neither party explicitly agreed to waive the funding requirement of AS 23.40.215(a), but the Council called the agreed-upon arbitration "binding" in an ordinance ratifying the agreements the parties had entered into before the arbitration. Fairbanks Ordinance 4977 (Mar. 25, 1991).

Use of that word without further definition or explanation does not amount to an assertion that the council would waive its statutory right to refuse to fund all or part of the arbitration award.

APEA has not shown conduct or words amounting to assertions by the City that the Council would not exercise its prerogative not to fund the award. Nor has APEA demonstrated that it reasonably relied on any such assertions as it claims to have understood them. Finally, APEA has not specified any evidence showing prejudice to it that resulted from its resubmission of the contested issues to arbitration, except the prejudice that normally results from the clear legal requirement that no arbitration awards are final until they are legislatively funded.

## IV. CONCLUSION

Alaska Statute 23.40.215(a) applies to arbitration agreements. APEA's claim that § 215(a) is inapplicable to political subdivisions of the state has no basis in the statutory language and is incorrect. APEA's final argument, that equitable estoppel bars the City from invoking § 215(a) to reject the arbitration result, fails because APEA did not establish any of the elements of equitable estoppel as a matter of law or fact. Therefore, we AFFIRM the superior court's decision.

RABINOWITZ, Justice, concurring.

I agree with the holdings set forth in sections III. A. and B. of the court's opinion. Because I believe APEA waived the equitable estoppel issue by failing to raise it in the superior court, I concur in the court's rejection, in Section III. C., of APEA's equitable estoppel argument. The court reaches the merits of the argument and concludes that the record does not support APEA's contention that equitable estoppel bars the City from applying section 215(a) to the arbitrator's result.

The court reaches the merits of the equitable estoppel issue because "The City conceded in oral argument that APEA raised equitable estoppel at the superior court level;

therefore APEA is not deemed to have waived this argument." My study of the record leads me to the conclusion that the issue was not adequately raised before the superior court. Thus I would hold that equitable estoppel has been waived by APEA for purposes of this appeal.[1] In short, I would not accord controlling significance to counsel for the City's concession at oral argument before this court that APEA had "tangentially" raised equitable estoppel at the superior court level, because record support is lacking for such concession.

1. *Nenana City Sch. Dist. v. Coghill,* 898 P.2d 929, 934 (Alaska 1995); *Carvalho v. Carvalho,* 838 P.2d 259, 261 n. 5 (Alaska 1992); *Gates v. City of* *Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991).