THOMAS KEANE & another *vs.* CITY AUDITOR
OF BOSTON & others.[1]

Suffolk. January 11, 1980. — March 24, 1980.

Present: QUIRICO, BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Statute*, Construction. *Commonwealth*, Collective bargaining. *Municipal Corporations*, Collective bargaining. *Court Reorganization Act*.

In a civil action brought by court officers of the Superior Court and various Municipal and District Courts in Suffolk County seeking an order requiring certain city of Boston officials to effect a pay increase approved by the city council, it was proper to allow the motion of the Chief Justice of the Supreme Judicial Court to intervene even though he was not technically the plaintiff's employer by virtue of the enactment of St. 1978, c. 478, § 74, which replaced the Chief Justice, as the plaintiffs' employer, with the Chief Administrative Justice of the Trial Court, where the latter position had not yet been filled. [204-205]

In an action by court officers of the Superior Court and various Municipal and District Courts in Suffolk County seeking an order requiring certain city of Boston officials to effect a pay increase approved by the City Council, there was no merit to the plaintiffs' contention that St. 1977, c. 278, was a nullity because it was intended to be part of a comprehensive court reorganization plan that was not enacted until 1978. [205-207]

An order of amendment approved by the Boston city council which granted a pay increase to court officers of the Superior Court and various Municipal and District Courts in Suffolk County was inconsistent with the provisions of G. L. c. 150E, as amended through St. 1977, c. 278, and was, therefore, unlawful and void. [208-211]

CIVIL ACTION commenced in the Superior Court Department on July 27, 1978.

The case was heard by *Dimond, J.*

---

[1] The collector-treasurer of the city of Boston and the Chief Administrative Justice of the Trial Court of Massachusetts.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Francis J. DiMento* for the plaintiffs.

*Paul T. Edgar* for the Chief Administrative Justice of the Trial Court, intervener.

*Kelam S. Derderian,* Assistant Corporation Counsel, & *Joseph W. Glannon* for Walter W. Merrill & another, submitted a brief.

LIACOS, J. The plaintiffs, court officers of the Superior Court and various Municipal and District Courts in Suffolk County,[2] commenced this action on July 27, 1978, in the Superior Court in Suffolk County. Their complaint, as amended, sought declaratory and injunctive relief against the auditor and collector-treasurer of the city of Boston. Those officials allegedly denied the court officers the benefit of a pay increase approved in the Boston city council's June 14, 1978, order of amendment to schedule B of the classification and compensation plan for the officers and employees of Suffolk County (hereinafter "order").[3] The plaintiffs prayed inter alia, for declarations that this order was valid; that St. 1977, c. 278, was a nullity; and that St. 1977, c. 278, and St. 1978, c. 478, were unconstitutional, as applied to the plaintiffs. A judge of the Superior Court granted the plaintiffs' request for a preliminary injunction prohibiting the defendants from interfering with the operation of the order. On August 4, 1978, the motion to intervene of Edward F. Hennessey, Chief Justice of the Supreme Judicial Court, was allowed. On August 9, 1978, upon the petition of the Chief Justice, a Justice of the Appeals Court vacated the preliminary injunction and issued an order restraining the defendants from paying the increased compensation for payroll periods commencing on or after August 9. Chief

---

[2] There are approximately seventy-eight court officers in the Superior Court in Suffolk County and approximately seventy court officers in the Municipal and District Courts. The plaintiffs and these officers are similarly situated.

[3] The Boston city council members are the county commissioners for Suffolk County. G. L. c. 34, § 4.

Justice Hennessey moved on August 25, 1978, to substitute Arthur M. Mason, Chief Administrative Justice of the Trial Court, as intervener-defendant. On September 11, 1978, after hearing, a judge granted the Chief Justice's motion.

The parties submitted a statement by which the parties agreed to some of the facts in issue on February 9, 1979, and the case was tried on February 28, 1979. The judge filed a memorandum of decision and order for judgment on March 14, 1979. On the same day, the court entered judgment that the Suffolk County order is null and void and St. 1977, c. 278, and St. 1978, c. 478, are constitutional as applied to the plaintiffs. The plaintiffs appealed, and we transferred their appeal here sua sponte. We affirm the judgment.

The parties' statement of agreed facts asserts in part: "10. On September 9, 1963, pursuant to G. L. c. 35, § 48-56, the Boston City Council adopted Schedules A and B of the Classification and Compensation Plans for the officers and employees of Suffolk County, which Schedules were approved by the then mayor on September 12, 1963, and which Schedules were from time to time thereafter amended. 11. As of June 14, 1978, Court Officers of Suffolk County had no collective bargaining agreement in effect. 12. On June 14, 1978, the City Council voted to amend by order said Schedule B so as to upgrade all Suffolk Court Officers, including plaintiffs, two compensation grades, effective retroactively to June 1, 1978. . . . 13. The Mayor of the City of Boston signed the Order . . . ." In addition, the statement indicates that "8. As of July 1, 1978, the employer of judicial employees was designated by statute to be the Chief Administrative Justice of the Trial Court. 9. The position of Chief Administrative Justice of the Trial Court of Massachusetts was not filled until August 11, 1978."

At trial, the plaintiffs' evidence showed that before July 1, 1978, the city of Boston (Suffolk County) paid the plaintiffs. The Commonwealth did not reimburse the city. On the first pay day after the order of amendment was enacted, the city payroll division refused to accept the plaintiffs' payroll which included the raises at issue. At trial, the plaintiffs

called Michael F. Flaherty, Chairman on the part of the
House of the Joint Legislative Committee on the Judiciary,
to testify about the legislative history of St. 1977, c. 278.
The judge excluded the testimony as immaterial. The
plaintiffs made an offer of proof. Also over the plaintiffs'
objection, the judge admitted various documents tending to
show a history of collective bargaining between Suffolk
County and unions representing its court officers. Other
challenged documents tended to show that, after June 14,
1977, the county ceased bargaining and the Chief Justice
began bargaining.

We turn now to the plaintiffs' claims of error. The plain-
tiffs argue that the judge erred in granting Chief Justice
Hennessey's motion to intervene. They contend that it was
error to declare the order of the city council void and to rule
that St. 1977, c. 278, and St. 1978, c. 478, are constitutional
as applied to court officers. Finally, the plaintiffs attack
the judge's exclusion of the testimony of Representative
Michael F. Flaherty and the admission of the documents
concerning collective bargaining.

The plaintiffs' attack on the standing of Chief Justice
Hennessey is misplaced. The plaintiffs' only argument
against intervention is the claim that, on the day he sought
to intervene, August 4, 1978, the Chief Justice was not tech-
nically the plaintiffs' employer. Statute 1978, c. 478, § 74,
effective July 1, 1978, replaced the Chief Justice, as the
plaintiffs' employer, with the Chief Administrative Justice
of the Trial Court, but the Chief Administrative Justice was
not appointed until August 11. The plaintiffs do not con-
tend that the Chief Administrative Justice, had he been ap-
pointed, would have lacked sufficient interest to intervene
under Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974). Nor do
they contend that any other party adequately represented
the State employer's interest. As the employer under the
earlier statute, Chief Justice Hennessey was the natural per-
son to represent that interest until the new position was
filled. He could not reasonably have waited to intervene
until August 11 because of the pressure to contest the pre-

liminary injunction promptly. As Chief Justice, he had ample authority to act. See, e.g., G. L. c. 211, §§ 2A, 3; G. L. c. 211B, § 7. Thus the motion to intervene was properly granted.

The plaintiffs' principal argument is that the Suffolk County order is not inconsistent with St. 1977, c. 278. Before the Legislature enacted St. 1977, c. 278, the county's representative negotiated collective bargaining agreements with court officers. G. L. c. 150E, § 1, as amended through St. 1976, c. 480, § 20. Effective June 13, 1977, St. 1977, c. 278, withdrew that power from the county and vested it in the Chief Justice.[4] The statute also moved the court officers from the category of county employees to the category of State judicial employees. Cf. *Massachusetts Probation*

---

[4] Statute 1977, c. 278, provides in relevant part: "Section 1. . . . 'Employee' or 'public employee,' any person in the executive or judicial branch of a government unit employed by a public employer except . . . . Section 2. Said definition of 'employer' or 'public employer' in said section 1 of said Chapter 150E is hereby further amended by adding the following sentence: — In the case of judicial employees, the employer shall be the chief justice of the supreme judicial court or any individual who is designated by him to represent him and act in his interest in dealing with judicial employees. . . . Section 4. Said chapter 150E is hereby further amended by striking out section 7, as most recently amended by section 21 of chapter 480 of the acts of 1976, and inserting in place thereof the following section: — Section 7. (*a*) Any collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years. The agreement shall be reduced to writing, executed by the parties, and a copy of such agreement shall be filed with the commission by the employer. (*b*) The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein; provided, that if the general court is not in session at that time, such request shall be submitted at the next session thereof. If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining. . . . (*d*) If a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations pursuant to section six of this chapter and any municipal personnel ordinance, by-law, rule or regulation; . . . any of the following statutory provisions or rules or regulations made thereunder; . . . (b) section fifty to fifty-six, inclusive, of chapter thirty-five; . . . the terms of the collective bargaining agreement shall prevail."

*Ass'n* v. *Commissioner of Administration,* 370 Mass. 651 (1976). However, St. 1977, c. 278, did not provide for State funding of court officers' salaries. The counties continued making such payments. In fact, even when the comprehensive court reorganization plan was enacted, St. 1978, c. 478, § 334, effective July 1, 1978, required counties to continue paying for maintenance and operation of the judicial system until the Commonwealth took over full funding. Statute 1978, c. 478, § 333, set up a timetable for the transition: the counties were to be reimbursed during fiscal 1979; the Commonwealth was to prepare a single State budget and assume full funding responsibilities beginning July 1, 1979. Statute 1978, c. 367, § 2, item 0315-0001, which contained an appropriation for reimbursing the counties for 1978 costs of court operations, included a proviso: "that the Suffolk county share of court expenditures shall not include the cost of any increase in compensation for existing positions or increase in the number of positions authorized subsequent to January first, nineteen hundred and seventy-eight, with the exception of such increase for which collective bargaining agreements have been signed prior to said January first, and raises which do not exceed the cumulative total of the raises granted state employees over the last three fiscal years."

The plaintiffs press two interpretations of this statutory arrangement. They contend that St. 1977, c. 278, is a nullity because it was intended to be part of a comprehensive court reorganization plan that was not enacted until 1978. St. 1978, c. 478. The delay was allegedly unexpected. The State did not take over funding of court officers' salaries in 1977. It follows, the plaintiffs argue, that the Chief Justice as public employer could not deliver on raises for which he bargained; his status as employer became meaningless when removed from the context of the comprehensive plan.

Second, even if the statute is not a nullity, the plaintiffs contend that the Legislature did not mean to exclude the possibility of unilateral county pay raises, because the Legislature ordered counties to continue paying court officers' salaries. Furthermore, St. 1978, c. 367, § 2, item 0315-0001,

shows that the Legislature knew of the raises here in question. Thus, the plaintiffs conclude, the counties could grant unilateral raises for as long as they continued paying the salaries.

The argument that the statute is a nullity runs counter to logic. A construction that would nullify a statute is not to be favored. See *Hein-Werner Corp.* v. *Jackson Indus., Inc.*, 364 Mass. 523, 527 (1974). Furthermore, when it enacted the court reorganization plan, the Legislature left St. 1977, c. 278, almost wholly intact. St. 1978, c. 478, § 74. But the most telling indication that the plaintiffs' argument is wrong is G. L. c. 150E, § 7 (c), inserted by St. 1977, c. 278, § 4. That section, which is still in effect, provides a specific method of funding any raises that might be negotiated. The section provides: "[The] employer shall submit to the governor, within thirty days after the date on which a collective agreement is executed by the parties, a request for an appropriation necessary to fund such incremental cost items contained therein as are required to be funded in the then current fiscal year." The Governor then decides whether to recommend that the General Court pass the appropriation. If he recommends passage, the General Court considers the request. Thus, the county was to continue paying court officers' basic salaries, but the State was to approve and, if appropriate, to pay any salary increases negotiated by the Chief Justice. In this setting, the Chief Justice's role was hardly a nullity.[5]

---

[5] The judge correctly excluded Representative Flaherty's testimony about the Legislature's intent in enacting St. 1977, c. 278. First, the statute is unambiguous, and resort to extrinsic aids is inappropriate. See, e.g., *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 427 (1979). Second, if we assume that the language is ambiguous, the plaintiffs do not point us to a single case in which courts have permitted a legislator to testify after the fact about legislative intent. See *McKenney* v. *Commission on Judicial Conduct*, 377 Mass. 790, 799 (1979) (postenactment affidavit of House Chairman of Committee on Judiciary is not relevant legislative history). It is the business of courts to construe statutes. "The views of individual members of the Legislature as to the meaning of a statute which were not officially

We must next consider whether the county order is consistent with G. L. c. 150E, as amended through St. 1977, c. 278. Determining whether a county ordinance is inconsistent with State law entails an inquiry into legislative purpose. "The legislative intent to preclude local action must be clear. If the Legislature has made no explicit indication of its intention in this respect, a legislative intention to bar local ordinances and by-laws purporting to exercise a power or function on the same subject as State legislation may nevertheless be inferred in all the circumstances. Legislation which deals with a subject comprehensively, describing (perhaps among other things) what municipalities can and cannot do, may reasonably be inferred as intended to preclude the exercise of any local power or function on the same subject because otherwise the legislative purpose of that statute would be frustrated." *Bloom* v. *Worcester,* 363 Mass. 136, 155 (1973). See *Grace* v. *Brookline,* 379 Mass. 43, 53-54 (1979); *New England Tel. & Tel. Co.* v. *Lowell,* 369 Mass. 831 (1976); *Del Duca* v. *Town Adm'r of Methuen,* 368 Mass. 1, 10-13 (1975).

General Laws c. 150E is a comprehensive scheme regulating public employee collective bargaining. *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 472-473 (1976). Furthermore, G. L. c. 150E, § 7 (*d*), states in pertinent part: "If a collective bargaining agreement reached by the employer and the exclusive representative contains a conflict between matters which are within the scope of negotiations . . . and . . . the following statutory provisions or rules or regulations made thereunder: . . . (b) sections fifty to fifty-six, inclusive, of chapter thirty five; . . . the terms of the collective bargaining agreement shall prevail." The city council authorized the raise here at issue under the authority of G. L. c. 35,

communicated to the Legislature prior to its enactment are not competent to be considered in determining the meaning which ought to be attributed to the statute." H. Hart and A. Sacks, The Legal Process, 1285 (tent. ed. 1958). See 2A C. Sands, Sutherland Statutory Construction § 48.16 (4th ed. 1973), and cases cited therein.

§ 56. Thus, if the raise were contrary to the terms of a negotiated agreement, the amendment would be invalid. The comprehensive character of the collective bargaining statutes, combined with the express indication that county personnel policies may not interfere with the end product of the collective bargaining process, create a strong inference that local action affecting any stage of that process is inconsistent with State law.

General Laws c. 150E, § 7 (c), inserted by St. 1977, c. 278, § 4, also provides the springboard for an answer to the plaintiffs' second argument. If the Legislature established a specific procedure for securing State funding of salary increases, it seems unreasonable that the Legislature would countenance unilateral county raises. As a party acting outside of the collective bargaining process, a county might disrupt a fragile compromise struck after long negotiations.[6] In the design of G. L. c. 150E, the Legislature contemplated resolution of employment disputes by specific bargaining representatives of generally equal bargaining power and by a specific method: collective bargaining. Therefore, absent contrary legislative direction, we cast a cold eye on rules that would multiply the number of entities involved in the collective bargaining process. See *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 472-475 (giving absolute veto over collective bargaining appropriations to mayor who was neither "employer" nor "appropriate legislative body" violated G. L. c. 150E); *Labor Relations Comm'n* v. *Natick,* 369 Mass. 431, 439 (1976) ("[B]ifurcated negotiations . . . do not present an obvious, desirable format for collective bargaining"). Similar considerations inform the provisions for an exclusive em-

---

[6] The defendants need not prove that any actual disruption occurred during collective bargaining between the Chief Justice and the court officers. Thus, we need not consider the admissibility of documentary evidence concerning the court officers' collective bargaining history. In particular, we need not consider whether the Chief Justice had commenced negotiations at the time of the county action. Statute 1977, c. 278, was in effect, and its efficacy precluded local interference even before collective bargaining began.

ployee bargaining representative. See, e.g., G. L. c. 150E, § 5. Beyond our concern with multiplication of entities, "an employer's unilateral change in conditions of employment under negotiation . . . is a circumvention of the duty to negotiate which frustrates the objectives of [collective bargaining as] much as does a flat refusal." *NLRB* v. *Katz*, 369 U.S. 736, 743 (1962). See *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n*, 377 Mass. 897, 904 (1979). A unilateral change by the employee violates the collective bargaining rights of the employer; a third-party's unilateral change might violate the collective bargaining rights of the employer, or the employees, or both. Thus, in light of the comprehensive statutory scheme and the nature of collective bargaining, the amendment constituted impermissible interference with State activity.[7]

Our understanding of St. 1977, c. 278, is consistent with St. 1978, c. 367, § 2, item 0315-0001. That item does not show legislative approval of the county's action. At most, it shows that the Legislature may have been aware of the raises in question. First, the plaintiffs have not shown that the court officers' raises are those mentioned in the proviso; in particular, they have not shown that the court officers' increases do not fall within the exception for "raises which do not exceed the cumulative total of the raises granted state employees over the last three fiscal years." Second, even assuming that the court officers' raises are those for which the Legislature refused to allocate funds, item 0315-0001

---

[7] Because we hold that the city council's order is inconsistent with St. 1977, c. 278, we need not consider whether the order also conflicts with St. 1978, c. 478. However, we point out that the interference would not be limited to the period before July 1, 1978, when the court reorganization plan became effective. Statute 1978, c. 478, § 328, provided that the transition to the new system of judicial administration should not cause a reduction of court officers' compensation. We need not decide whether collective bargaining after July 1, 1978, can effect a reduction. It is enough to note that the court officers' July 1, 1978, salary level provides a benchmark from which the collective bargaining process starts. The employer's position would vary significantly depending on the validity of the Suffolk County order.

merely demonstrates awareness of the county's action. There is no reason to suppose that in a budget item referring to the order, the Legislature should state that the order is illegal. And the Legislature's refusal to reimburse the county for this salary increase seems to us to signify disapproval of the county action. For these reasons, the item supports our view that the order of amendment is unlawful and void.[8]

The plaintiffs raise various constitutional arguments, but they are stated vaguely, are supported by no authority, are based on a single, conclusory allegation in the complaint, and are otherwise unsubstantiated by the record.

*Judgment affirmed.*

---

[8] The plaintiffs cite *Ellis* v. *Selectmen of Barnstable*, 361 Mass. 794 (1972). There we considered whether articles in a town meeting warrant were out of order. The articles sought to increase police salaries, and, if adopted, might have created conflict between the town's personnel by-law and the arguable requirements of a collective bargaining agreement. We held that the articles were in order because the town "had the power to appropriate more or less money than was necessary to implement the agreement." *Id.* at 800. According to the plaintiffs, *Ellis* shows that we have treated collective bargaining agent and paymaster as separate governmental functions. They argue that a change in collective bargaining agent — from county representative to the Chief Justice — did not necessarily deny the power of the paymaster — the county — to grant a raise.

*Ellis* is only loosely relevant to this case. *Ellis* involves no issue of State supremacy. Furthermore, the collective bargaining statute then in effect provided that local by-laws prevailed in conflicts with a collective bargaining agreement. G. L. c. 149, § 178I. The opposite rule governs under the present statute. G. L. c. 150E, § 7 (*d*). Thus, *Ellis* does not stand for some general independence of the collective bargaining and paying functions. Nor does it license local officials to interfere with State collective bargaining policy. It merely states that, under a statute no longer in effect, a town meeting could vote on an amended personnel by-law providing for a different salary from that which was arguably required by a collective bargaining contract.