GRIMES, Judge.
We review orders of the circuit court pursuant to certification by the First District Court of Appeal that the issues presented in the case are of great public importance and require immediate resolution. We have jurisdiction under article V, section 3(b)(5) of the Florida Constitution.
*327 As a result of negotiations between the governor and several public employee unions, chapter 22A-8 of the Florida Administrative Code was amended on August 1,1986. As a consequence, annual leave was increased from 13 to 17.33 hours per month and sick leave was decreased from 8 hours to 4 hours 20 minutes per month. If an employee accumulated more than 240 hours of annual leave in a year, the employee had the option of converting the excess hours into sick leave or receiving a cash payment for one-half of the excess hours. In addition, the amendment provided that sick leave could only be used when the employee’s illness was verified in writing by a physician. Thereafter, the governor entered into collective bargaining agreements with the unions which were effective between July 1, 1987, and June 30, 1990. These agreements incorporated by reference the then-existing provisions of chapter 22A-8 of the Florida Administrative Code.
As part of the 1988 General Appropriations Act, the legislature included a proviso which directed that the annual and sick leave benefits be returned to their July 1, 1986, levels. Ch. 88-555, § 9.3.A(5), Laws of Fla. In addition, annual leave in excess of 240 hours was forfeited as of December 31 of each calendar year, and the requirement of obtaining a written verification of illness was eliminated. On September 26,1988, chapter 22A-8 of the Florida Administrative Code was amended so as to be consistent with the proviso language of the 1988 appropriations act.
Three public employee unions brought suit [1] against the State of Florida, Lawton Chiles, as Governor of the State of Florida, and the Florida Department of Management Services (collectively referred to as the State), contending that the legislature’s action abridged their constitutional right to collective bargaining. On March 14, 1990, the trial court held section 9.3.A(5) of the 1988 appropriations act to be invalid under article I, section 6 of the Florida Constitution and directed the State to return the annual and sick leave benefits to levels called for by the bargaining agreements. The First District Court of Appeal affirmed the trial court’s order. State v. Florida Police Benevolent Ass’n, 580 So.2d 619 (Fla. 1st DCA 1991).
Because a portion of a state statute had been held unconstitutional, we reviewed that decision in State v. Florida Police Benevolent Ass’n, 613 So.2d 415 (Fla.1992). We held that collective bargaining agreements entered on behalf of public employees are subject to the appropriations power of the legislature. Therefore, the legislature was not bound to fund a program simply because the agreement called for it. On the other hand, we also held that where the legislature provides enough money to implement the benefit as negotiated but attempts to unilaterally change the benefit, the change will not be upheld and the negotiated benefit will be enforced. We also observed that should the legislature be able to show a compelling state interest justifying the abridgement of the right to collectively bargain, its unilateral changes would be enforced. We reversed and remanded the ease with the following directions.
For the foregoing reasons, we reverse the district court’s decision declaring section 9.3A.(5) of the 1988 Appropriations Act to be unconstitutional, quash the order of the trial court granting summary judgment in favor of the unions, and remand to the trial court for further proceedings consistent with this opinion. There is currently no record evidence on the issue of whether the negotiated benefits could be fully funded by the money already allocated by the legislature. Indeed, the parties cannot even agree on the question of whether the legislature’s benefits program actually saved the state money over the cost of funding the benefits as negotiated. Therefore, the trial court must determine whether the legislative appropriation was sufficient to fund the annual and sick leave provisions of the collective bargaining agreement. If it was, these provisions of the collective bargaining agreement must be enforced. If these provisions were underfunded, the legislative determination shall control.
Id. at 421.
Thereafter, the State filed a motion for summary judgment asserting that the legis *328 lative intent to fund the annual and sick leave benefits at the previous July 1, 1986, level was controlling. The unions filed a cross-motion for summary judgment, pointing out that the legislature does not specifically appropriate money for the funding of annual and sick leave benefits for career service employees and that the State had made no studies to determine whether the legislature’s return of annual and sick leave benefits to the 1986 level saved the State money over the cost of funding the benefits as negotiated. On May 24, 1994, the trial court granted the unions’ motion, reasoning that because the annual and sick leave benefits are part of the employees’ employment benefit package, the legislative appropriations were sufficient to fund the benefits of the collective bargaining agreement as negotiated. This order was affirmed by the district court of appeal. State v. Florida Police Benevolent Ass’n, 653 So.2d 1124 (Fla. 1st DCA 1995).
Subsequently, the unions asserted a right to annual and sick leave benefits under the agreement as negotiated from 1988 to the present time. The State filed a motion for partial summary judgment seeking an order clarifying that the only year for which the unions were entitled to relief was 1988-89. On March 5, 1996, the trial court denied the State’s motion and ruled that “the final order of the court rendered March 14, 1990, is hereby directed to be enforced.” Thereafter, the unions filed a petition for enforcement of the court’s March 14,1990, order and request for imposition of sanctions. On July 30, 1996, the State filed a motion for relief from judgment pursuant to Florida Rule of Civil Procedure 1.540. This motion was denied on August 21, 1996. On the same date, the court granted the unions’ petition for enforcement, stating “that enforcement of the judgment rendered in 1990 requires payment or restoration of annual and sick leave credits for all career service employees who are employed by the State of Florida, or were employed by the State of Florida, in bargaining units represented by plaintiffs for the period of time of July 1, 1988, through the present.” On September 3, 1996, the State filed a motion for rehearing of both orders, supported by affidavits purporting to demonstrate that the 1988 legislature had deviated from the bargained benefit levels in order to avoid serious depletions of the Health Insurance Trust Fund. The State’s motion for rehearing was denied on September 5, 1996, and this appeal followed.
The State first argues that the unions are entitled to no relief even for the budget year of 1988-89. According to the State, the May 24,1994, order granting summary judgment was not in the form of a final judgment and therefore the district court of appeal had no jurisdiction to entertain the State’s appeal. The State asserts that the March 5, 1996, order directing the March 14, 1990, order to be enforced was invalid because this Court had already quashed the March 14, 1990, order in our 1992 opinion. Likewise, the State contends that the August 21, 1996, orders were invalid because the effect of these orders was to perpetuate the erroneous March 5,1996, order.
Contrary to the State’s contention, we construe the language of the March 5, 1996, order as responding to our mandate with respect to whether or not to enforce the provisions of the collective bargaining agreement. The March 14, 1990, order held section 9.3.A(5) of the 1988 appropriations act unconstitutional, thereby reinstating the annual and sick leave benefits to the level provided in the bargaining agreement. In granting the unions’ motion for summary judgment on May 24, 1994, the trial court found that the legislative appropriation for the 1988-89 year was sufficient to fund the annual and sick leave benefits in the collective bargaining agreement and implicitly concluded that section 9.3.A(5) of the 1988 appropriations act was unconstitutional. When the trial court on March 5,1996, ordered the enforcement of the March 14, 1990, order, it was simply following the rationale of the May 24, 1994, order which was intended to reinstate the holding of the March 14, 1990, order.[1] Therefore, even if the May 24, 1994, order granting summary judgment was not *329 in a form sufficient for the First District Court of Appeal to accept jurisdiction of the State’s appeal, see McCready v. Villas Apartments, 379 So.2d 719 (Fla. 5th DCA 1980); Shupack v. Allstate Insurance Co., 356 So.2d 1298 (Fla. 3d DCA 1978), the order of March 5, 1996, which was final, granted the unions the same relief and the State did not appeal that order. The State’s present effort to show that the legislature had a compelling state interest in 1988 to alter the annual and sick leave benefits comes too late. We hold that the provisions of the bargaining agreement must be enforced for the year of 1988-89.[2]
The unions’ contention that they are entitled to the same benefits for subsequent years is another matter. The issue before the trial court in 1990 and before this Court in 1992 related only to the budget year of 1988-89. It was only in 1996, after the First District Court of Appeal had affirmed the order granting summary judgment, that the unions first contended that they were entitled to the 1988-89 benefits for all ensuing years. The pleadings were never amended to request this relief. While the unions made this argument in the hearing which led to the March 5, 1996, order, it is evident from the transcript of that hearing that the judge did not intend to rule on the merits of the unions’ position. The language of the March 5,1996, order simply held that the “final order of the court rendered on March 14, 1990, is hereby directed to be enforced.”
The March 14,1990, order stated:
The Court therefore declares Section 9.3.A.(5) of the 1988 General Appropriations Act to be unconstitutional as a violation of Article I, Section 6 of the Florida Constitution. Plaintiffs’ renewed motion for summary judgment is GRANTED. Defendants are directed to return the annual and sick leave benefits of the State career service employees represented by Plaintiffs which are the subject of the complaint to the status quo ante the effective date of Section 9.3.A.(5) of the 1988 General Appropriations Act and make said employees whole, by restoring to them the appropriate annual and sick leave credits warranted as if the aforementioned benefits were in full force and effect at all times subsequent to the effective date of Section 9.3.A.(5) of the 1988 General Appropriations Act.
We do not construe this language as doing anything more than returning the annual and sick leave benefits to their negotiated level for the 1988-89 budget year. The bargaining agreements containing this level of benefits only covered the years from July 1,1987, to July 1, 1990, and even these agreements provided that the benefits for 1989-90 would be negotiated. Merely because it was determined that the legislature was obligated to fund the annual and sick leave benefits in the bargaining agreement for 1988-89 does not mean that it was similarly obligated for the following year. See Chiles v. United Faculty of Florida, 615 So.2d 671, 678 (Fla.1993) (legislature has no obligation to extend same level of funding into new fiscal year). The March 14, 1990, order only dealt with the constitutionality of section 9.3A.(5) of the 1988 appropriations act. In the 1989 appropriations act, the legislature again provided that the annual and sick leave benefits would be at the level contained in chapter 22A-8 of the Florida Administrative Code as of July 1, 1986. Ch. 89-253, § 1.1(5), Laws of Fla. The unions never challenged the 1989 proviso by amending their complaint or filing a new cause of action.[3] Therefore, the 1989 proviso controlled the benefits for the 1989-90 budget year.
As in the case of the 1989-90 budget year, the unions did not amend their pleadings so as to attack the annual and sick leave benefits awarded for the years subsequent to July 1,1990. In any event, new bargaining agreements have superseded the leave provisions of the bargaining agreements covering the *330 years 1987-90. All collective bargaining agreements entered into between the unions and the State for the years July 1, 1990, to date contain provisions for annual and sick leave benefits which incorporate chapter 22A-8 (now 60K-5) of the Florida Administrative Code.[4] These bargaining agreements do not contain any provisions reserving the prior annual and sick leave rates that were negotiated in 1987-90 bargaining agreements. However, each of these bargaining agreements does contain so-called “zipper clauses” which expressly state that the agreement “supersedes and cancels all prior practices and agreements.” Hence, the unions cannot now contend that the negotiated annual and sick leave benefits contained in the bargaining agreement for the years 1987-90 remain in effect.
We affirm the orders of the trial court to the extent they require the State to pay annual and sick leave for the year 1988-89 at the levels contained in the bargaining agreements.[5] We reverse the remainder of such orders. In order to lay this litigation to rest, we also address the question of interest. Because we find this case somewhat analogous to our decision in Chiles v. United Faculty of Florida, we hold that no prejudgment interest shall be paid. However, post-judgment interest shall accrue on the monies now owing from March 5,1996, the date upon which it was finally determined that the State was obligated to pay the annual and sick leave benefits for the year 1988-89.
It is so ordered.
OVERTON, HARDING, WELLS and ANSTEAD, JJ., concur.
SHAW, J., concurs in result only.

. The trial judge who entered the March 5, 1996, order was a successor to successive judges who entered the March 14, 1990, and May 24, 1994, orders.

. The State's lawyer even conceded at the hearing on the State's 1996 motion for partial summary judgment that the unions were entitled to the 1988-89 benefits.

. Had the 1989 proviso been challenged, it would not necessarily have met the same fate as the 1988 proviso because by that time the State might have been able to demonstrate a compelling state interest or that the legislature's alternative funding of benefits had saved money.

. The rules pertaining to annual leave (rule 22A8.010) and sick leave (rule 22A-8.011) were transferred from chapter 22A-8 to chapter 60K-5 in 1992. In 1994, these rules were substantially rewritten and are now located at rule 60K-5.028 and rule 60K-5.030.

. We reject the State’s allegations that the unions' lawyers made misrepresentations to the trial court.