PER CURIAM.
Appellant, the Florida Police Benevolent Association, Inc. (P.B.A.), seeks reversal of an order of the trial court dismissing its complaint for declaratory relief. We affirm.
P.B.A. is the certified bargaining agent for the security services bargaining unit which encompasses the state’s correctional and correctional probation officers. In January, 2000, P.B.A. entered negotiations with Governor Bush. In April, 2000, P.B.A. and Governor Bush reached a negotiated wage agreement which provided for a wage increase totaling five percent during fiscal year 2000-2001 for employees in the security services unit. Consistent with the negotiated wage agreement, Governor Bush submitted a budget request to the Florida Legislature in an amount sufficient to fund the negotiated wage agreement. The legislature, however, provided for a two and one-half percent wage increase in the 2000-2001 General Appropriation Act.
P.B.A. filed a declaratory action in circuit court based upon the legislature’s action. P.B.A. argued in the complaint that Section 8.1.A(1) of the 2000-2001 General *586 Appropriation Act [1], section 447.309(2)(b)[2], Florida Statutes, and the overall conduct of the state, Governor Bush and the Florida Legislature during the bargaining process, were all unconstitutional as violations of the fundamental right to bargain collectively which is guaranteed by Article I, Section 6, of the Florida Constitution. P.B.A. sought implementation of the negotiated wage agreement and a directive addressed to the legislature requiring it to review and revise the negotiation process found in the Florida Public Relations Act for career service employees so as to ensure such employees an effective and meaningful collective bargaining process.
The trial judge dismissed the complaint for declaratory relief with prejudice. The judge concluded that: “Plaintiff would have this Court declare, in effect, that the Governor’s negotiations bind the legislature .... Plaintiff cannot state a cause of action requiring legislative funding of an executive negotiation without offending the separation of powers doctrine.”
The supreme court has previously recognized that public bargaining and private bargaining are inherently different because, under the Florida Constitution, exclusive control over public funds rests solely with the legislature. “The fact that public employee bargaining is protected under Florida’s Constitution does not require us to ignore universally recognized distinctions between public and private employees. The constitutional right to bargain must be construed in accordance with all provisions of the constitution. Surely it was not intended to alter fundamental constitutional principles, such as the separation of powers doctrine.” State v. Florida Police Benevolent Association, Inc., 613 So.2d 415, 418 (Fla.1992). A wage agreement with a public employer is subject to the necessary public funding which involves the powers, duties, and discretion of the legislature. The legislature is not required to fund a collective bargaining agreement of public employees. “Any other rule would permit the executive branch of government, by entering into collective bargaining agreements calling for additional appropriations, to invade the legislative branch’s exclusive right to appropriate funds.” Id. at 418-419.[3] Accordingly, the trial judge correctly dismissed the complaint.
*587 In State v. Florida Police Benevolent Association, Inc., 613 So.2d 415 (Fla.1992), the State entered into collective bargaining agreements with several unions. The agreements incorporated by reference the then-existing provisions of section 22A-8 of the Florida Administrative Code, which governed attendance and leave of career service employees. At the time the agreements were negotiated, employees were entitled to 17.333 hours per month of annual leave and four hours and 20 minutes per month of sick leave. If an employee accumulated more than 240 hours of annual leave in a year, the employee had the option of converting the excess hours into sick leave or receiving a cash payment for one-half of the excess hours. The legislature then enacted the general appropriations act, with proviso language that altered the leave policy for career service, employees and thus the leave awards for which the unions had bargained. Under the proviso, annual leave was decreased to thirteen hours per month, sick leave was increased to eight hours per month, and all accumulated annual leave in excess of 240 hours was cancelled, thus eliminating the cash payment and sick leave conversion options. The supreme court addressed the issue of the power of the legislature to make the unilateral changes. Justice Grimes, writing for the majority, concluded that where “the legislature provides enough money to implement the benefit as negotiated, but attempts to unilaterally change the benefit, the changes- will not be upheld, and the negotiated benefit will be enforced. This result would not impede upon the legislature’s exclusive power over public funds, because the funds would already be there to enforce the benefit. ’Where the legislature does not appropriate enough money to fund a negotiated benefit, as it is free to do, then the conditions it-imposes on the use of the funds will stand even if contradictory to the negotiated agreement” Id. at 421 (footnote omitted). The matter was remanded for the trial court to determine whether the legislative-appropriation was sufficient to fund the annual and sick leave provisions of the collective bargaining agreement, with directions that the provisions of the collective bargaining agreement must be enforced if it was sufficient.[4]
It is not entirely clear to us what is meant by the language quoted above. The majority apparently determined that where the legislature funds a collective bargaining agreement, but tries to change the terms, the agreement will be enforced; when the legislature “underfunds” a collective bargaining agreement, the legislature can say how the funds will be distributed. Whether or not we are correct in our understanding, the pleadings in the pres *588 ent case do not entitle P.B.A. to relief under the supreme court’s decision. The complaint must contain, at a minimum, an allegation that the pay package was fully funded in accordance with the collective bargaining agreement but the legislature changed the terms of how the money is to be spent within the bargaining unit. P.B.A., in its complaint for declaratory relief, alleged that the legislature provided a competitive pay adjustment in the amount of 2.5%, unilaterally reducing the agreement and, instead, “funded for implementation a competitive pay adjustment which is substantially less than that secured through the collective bargaining process.” (Emphasis added). An allegation that the General Appropriations Act contained sufficient monies in its entirety to fund the negotiated agreement is not sufficient. An allegation that it is the P.B.A.’s belief and intent to demonstrate that a substantial amount of monies were shifted to “merit” wage increases by the legislature, even within the Florida Department of Corrections, is likewise insufficient.
Accordingly, the order on appeal is AFFIRMED.
BOOTH, BARFIELD, and PADOVANO, JJ., CONCUR.

. Section 8.1 .A(l) of the Conference Report on House Bill 2145, General Appropriations Act FY 2000-2001 provides: “Funds are provided in Specific Appropriation 1866 for pay increases for all eligible employees represented by the Florida Police Benevolent Association. ... Funds are to be distributed as follows: 1) Based on the funds provided in Specific Appropriation 1866 which are different from the funds recommended for the negotiated collective bargaining agreement, it is the intent of the Legislature for all eligible unit and non-unit employees assigned to the Security Services pay plan to receive a competitive pay adjustment of 2.5% on each employee's September 30, 2000, base rate of pay, effective October 1, 2000.”

. Section 447.309(2)(b), Florida Statutes (2000) provides: "If the state is a party to a collective bargaining agreement in which less than the requested amount is appropriated by the Legislature, the collective bargaining agreement shall be administered on the basis of the amounts appropriated by the Legislature. The failure of the Legislature to appropriate funds sufficient to fund the collective bargaining agreement shall not constitute, or be evidence of, any unfair labor practice. All collective bargaining agreements entered into by the state are subject to the appropriations powers of the Legislature, and the provisions of this section shall not conflict with the exclusive authority of the Legislature to appropriate funds.”

. Similar to the situation in State v. Florida Police Benevolent Assoc., Inc., 613 So.2d 415 (Fla.1992), the negotiated agreement at issue recognized this limitation. The agreement provided that the Governor "agrees to recommend to the 2000 Legislature sufficient funds to implement the following pay increases for fiscal Year 2000-2001.”

. The majority relied on the decision in New Jersey v. State Troopers Fraternal Association, 91 N.J. 464, 453 A.2d 176 (1982). There, a collective bargaining agreement gave troopers participation in the state's prescription drug program, which at the time provided that the state would pay for drugs but the employee would pay a deductible of $1.25 per prescription. In its next appropriations act, the New Jersey Legislature allocated funds for the program based upon a co-payment by employees of $2.50 per prescription. The New Jersey court addressed whether the legislature’s exclusive power over appropriations entitled it to make unilateral program changes. The court first noted that the legislature was not bound to fund the program simply because it was included in the collective bargaining agreement. However, because the legislature did choose to fund the program, and because there was no suggestion that the money appropriated was insufficient to cover the program at the $1.25 level, the court held that enforcing the program at this level would not infringe on the appropriations power. The Florida Supreme Court majority found "this test to be a reasonable accommodation of both the right to collectively bargain and the legislature’s exclusive control over the public purse.” 613 So.2d at 421.